IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE CO. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 5053 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| DUNDEE REGER, LLC, KEVIN W. REGER and | ) | |
| CORNERSTONE NATIONAL BANK | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| CORNERSTONE NATIONAL BANK & TRUST | ) | |
| COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETER G. HALLAM, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff First American Title Insurance Company ("FATIC") has brought an eight count complaint against defendants Dundee Reger, LLC ("Dundee"), its sole member Kevin Reger (Reger"), and Cornerstone National Bank. Count I is brought against Dundee for breach of a Title Indemnity-Escrow Agreement ("Indemnity Agreement"). Count II is brought against Reger and Cornerstone National Bank for unjust enrichment. Count III, alleging fraudulent conveyance, is brought against all three defendants. Counts IV through VIII are brought as subrogee of Zale Associates, LLC ("Zale") pursuant to a title insurance policy FATIC issued to Zale. Counts IV and V are brought against Dundee Reger for breach of a sale contract between Dundee and Zale. Count VI alleges breach of a special warranty deed conveyed by Dundee to

Zale. Count VII alleges unjust enrichment against Reger and Cornerstone, and Count VIII is brought against all three defendants for fraudulent conveyance.

Cornerstone answered the complaint, raised a number of affirmative defenses, filed crossclaims against Dundee and Reger, and a third-party complaint against Attorney Peter Hallam who represents Dundee and Reger, and also represented Cornerstone in an underlying state court mechanic's lien action that forms the basis of the instant dispute.

In separate motions, Dundee and Reger have moved to dismiss FATIC's complaint. They each also move to dismiss Cornerstone's crossclaims against them. Finally, Hallam has moved to dismiss the third-party complaint. For the reasons described below, all motions are denied, except that Dundee's and Reger's motions to dismiss the crossclaims are granted as to Count V only.

## FACTS

As of 2007, Dundee owned property located at 850 West Dundee Road, Wheeling, Illinois. It hired Walter Daniels Construction Co., Inc. ("Daniels") to build an AutoZone store on the property. That work was apparently funded by a construction loan from Cornerstone to Dundee, secured by a construction mortgage recorded by Cornerstone on May 29, 2008. A dispute arose between Dundee and Daniels, and on October 8, 2008, Daniels recorded a mechanic's lien against the property. On October 27, 2008, Daniels filed a complaint in the Circuit Court of Cook County, Illinois (the "foreclosure court") for breach of contract and to foreclose the mechanic's lien (the "foreclosure action").

On September 13, 2010, the foreclosure court entered an order providing:

> This court has control over the sale of 850 West Dundee R., Wheeling, Illinois, the Premises at issue in this case. Any sale of the premises is subject to court approval. The defendant will inform counsel for Daniels and the Court if it receives any letter of intent or firm offer for the purchase of the premises.

In February 2012, Cornerstone loaned Dundee $2,253,541.38 pursuant to a loan agreement dated February 20, 2012. Dundee executed and delivered a promissory note to Cornerstone in that amount. The loan was secured by the May 29, 2008, construction mortgage. Reger executed a personal guarantee of Dundee's obligations under the note. On April 26, 2012, the foreclosure court entered an order providing that Daniels' lien had priority over Cornerstone's construction mortgage.

Despite the foreclosure court's September 13, 2010 order, Dundee entered into a contract to sell the property to Zale without disclosing to or obtaining approval of the court. On January 23, 2013, Dundee sold the property to Zale pursuant to an agreement (the "Sale Agreement") entered on December 21, 2012. Dundee conveyed title to the property to Zale by Special Warranty deed dated January 15, 2013, executed by Reger on behalf of Dundee.

To facilitate the sale, Dundee asked FATIC to issue a title insurance policy to Zale, insuring against any loss by reason of defects in title. Because Dundee wanted FATIC to issue the insurance policy either without mentioning the Daniels lien or to insure any risk of loss it presented, FATIC required Dundee to enter into the Indemnity Agreement, under which Dundee agreed to fully protect, defend and save FATIC harmless from and against the Daniels lien. In addition, at closing, Dundee deposited $195,727.26 into a title indemnity account with FATIC. At closing, Cornerstone received $2,216,853.55 to cause it to release its construction lien.

3

Dundee received $442,263.78 of sale proceeds ("net proceeds") which were then distributed to Reger.

Dundee notified the foreclosure court of the sale in May 2013. On May 15, 2014, Daniels moved for sanctions against Dundee, Reger, Cornerstone and Zale, for violation of the September 13, 2010 order. The court continued that motion until its final order.

On July 18, 2014, the foreclosure court entered its final order and memorandum opinion in which it found that Daniels had a lien against the property in the amount of $486,183.87 plus interest of $277,997.70, and entered judgment against Dundee and Zale. The court ordered Dundee to pay Daniels $764,174.57 within 30 days or the premise would be sold. The court did not rule on the motion for sanctions.

Zale tendered the defense of the Daniels lien, motion for sanctions, and the judgment to FATIC under the terms of the title insurance policy. FATIC accepted the tender and on August 7, 2014, made demand on Dundee and Reger under the Indemnity Agreement to return to FATIC the net proceeds it received at closing to be added to the title indemnity deposit, and to submit sufficient additional funds to satisfy the judgment.

On November 19, 2014, FATIC and Zale each moved to intervene in the foreclosure action, to bring claims against Dundee and Reger. The court denied those motions on December 16, 2014, "without prejudice to any rights to pursue causes of action in a separate proceeding or proceedings." Having failed to receive anything from Dundee and because the value of the property exceeded the judgment, on April 4, 2015, FATIC paid the judgment in full to satisfy its obligations to Zale under the title insurance policy.

**DISCUSSION**

I. **Attacks on the Complaint**

    A. Dundee Reger's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Dundee has moved to dismiss FATIC's complaint under Fed. R. Civ. P. 12(b)(1), arguing that the court lacks jurisdiction under the Rooker-Feldman Doctrine.[1] In the alternative, Dundee argues that the complaint is barred by res judicata. Neither doctrine is applicable to this case.

Rooker-Feldman stands for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 21 (1987) (Brennan concurring). Rooker-Feldman is a jurisdictional bar to a court's consideration of a case, unlike the similar doctrines of res judicata or claim preclusion, which are affirmative defenses. See El v. Circuit Court of the Tenth Judicial Circuit of Illinois, 2015 WL 5542993 *3 (C.D. Ill. Sept. 18, 2015).

Rooker-Feldman bars claims already considered by a state court and claims that arise from the same causal nexus that provoked the state court claims. Id. at *4; Feldman, 460 U.S. at 483. If a federal claim is "inextricably intertwined" with the state court ruling, the district court has no subject matter jurisdiction over the issue even if the plaintiff did not raise the federal claim in the state court action. El, 2015 WL 5542993 at *4; Feldman, 460 U.S. at 483. To determine whether a claim is inextricably intertwined with the state court ruling, this court must determine "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." Centres, Inc. v. Town of Brookfield, 148 F.3d

---

[1] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

699, 702-03 (7th Cir. 1998). The Supreme Court has emphasized the narrowness of the doctrine, stating that it is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). In short, Rooker-Feldman prevents a party from "effectively trying to appeal a state court decision in federal district or circuit court." Hukic v. Aurora Loan Services, 588 F.3d 420, 431 (7th Cir. 2009).

In the instant case, FATIC is not challenging any of the rulings in the state foreclosure action. It was not a party to that action and is proceeding according to the order in that case denying it leave to intervene. FATIC's claims in the instant case arise out of Dundee's and Reger's failure to comply with the Indemnity Agreement, and the Sales Agreement with Zale. Thus, even if Dundee is correct (and it is not) that the state foreclosure court approved the sale to Zale by finding that the foreclosure would apply against Zale as purchaser, FATIC is not challenging the validity of that order, and this court is not being asked to review the validity of that or any other order. Because Rooker-Feldman does not apply, Dundee's motion to dismiss for lack of subject matter jurisdiction is denied.

In the alternative, Dundee argues that all of FATIC's claims against it are barred by res judicata. Res judicata provides that "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or

6

cause of action." Nowak v. St. Rita High School, 197 Ill.2d 381, 389 (2001).[2] In Illinois, the elements of res judicata are: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies. Rose, 2016 WL 909126 at *2 (citing Nowak, 197 Ill.2d at 389).

The doctrine is inapplicable to the instant case. Although the state foreclosure court reached a valid and final decision, it never addressed FATIC's claims against Dundee or Reger, nor was FATIC a party to the state court action. Dundee argues that FATIC's claims should be barred because they were required to be brought in the state foreclosure action, but the state court judge refused to hear those claims, denying without prejudice FATIC's motion to bring those claims into the case.

Nor are the claims identical. In Illinois, separate claims are considered the same cause of action if "they arise from a single group of operative facts, regardless of whether they assert different theories of relief." Rose, 2016 WL 909126 at *2. This "transactional test" permits claims to be part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." River Park, Inc. v. City of Highland Park, 184 Ill.2d 290, 311 (1998).

As noted, FATIC's claims are based on Dundee's breach of the Indemnity Agreement and the Sale Agreement with Zale. It is true that all of its claims arise out of the improper sale of the property to Zale, but the legitimacy of that sale was not at issue in the foreclosure case, which involved only the validity of the Daniels lien. The sale to Zale, which occurred after the

---

[2]Illinois claim preclusion law applies because the earlier judgment was rendered by an Illinois court. Rose v. Board of Election Com'rs for City of Chicago, __ F.3d __ 2016 WL 909126 *2 (March 10, 2016).

7

court determined the validity of the lien, did not arise out of the same group of facts as the Daniels lien, which involved only Daniels' work and Dundee's failure to pay. Consequently, FATIC's complaint is not barred by res judicata.

      B.      <u>Reger's Motion to Dismiss for Failure to State a Claim</u>

Reger has moved under Fed. R. Civ. P. 12(b)(6) to dismiss Counts II, III, V, VII and VIII of the complaint for failure to state a claim. Such a motion challenges the sufficiency of the complaint, not its merits. <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a Rule 12(b)(6) motion the court accepts at true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. <u>Sprint Spectrum L.P. v. City of Carmel, Indiana</u>, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 549, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

In Count II, FATIC alleges a claim against Reger for unjust enrichment based on his individual retention of the $442,263.78 in net proceeds paid to Dundee from the sale to Zale. Reger's argument that the count is barred by res judicata and Rooker-Feldman is rejected for the reasons already discussed. Reger also argues that the count is barred by the Illinois Limited Liability Company Act, 805 ILCS 180/10-10(a), which provides that "a member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager."

"To state a claim for unjust enrichment in Illinois, a plaintiff must allege that the defendant has unjustly retained the benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." Williams v. National Housing Exchange, Inc., 949 F.Supp. 650 (N.D. Ill. 1996). In the instant case, FATIC alleges that Reger's personal retention of the net proceeds of the sale is fundamentally unfair because the sale caused FATIC to pay $621,408.01 of its own funds to satisfy the Daniels' judgment and protect Zale's title, while Reger avoided his own contractual liability on his guarantee of the Cornerstone mortgage loan and his personal promise to hold Zale and FATIC harmless against any damages resulting from the Daniels' lien. The actions complained of are those of Reger personally, not in his capacity as a member of Dundee. Because the Illinois Limited Liability Company Act is not applicable, Reger's motion to dismiss Count II is denied.

In Counts III and VIII, FATIC asserts claims against Reger, both on its own and as subrogee of Zale, for fraudulent conveyance based on the Zale sale and the transfer of approximately $2.2 million to Cornerstone to pay off the construction mortgage and the net distribution of $442,263.78 to Dundee and to Reger personally, which left Dundee unable to pay its debts as they became due in the ordinary course of business.

Section 5 of the Illinois Fraudulent Transfer Act, 740 ILCS 160/5, provides that a transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer: (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonable equivalent value in exchange for the transfer or obligation, and the debtor (a) was engaged in a transaction for which

9

the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (b) intended to incur, believe or reasonably should have believed that he would incur debts beyond the ability to pay as they became due.

FATIC clearly alleges in Counts III and VIII that Dundee and Reger structured the sale to Zale to avoid paying the Daniels judgment, and that once the sale was closed, Dundee was left without assets to pay the judgment and in fact refused FATIC's demand that it do so. These counts this state a claim for fraudulent transfer.

In Count V, FATIC, as subrogee of Zale, asserts a claim against Reger for breach of Section 3.3A of the Sale Agreement, under which Reger personally agreed "to protect, defend and hold [Zale] harmless of and from any cause of action, demand, damage, expense, loss of obligation that [Zale] may incur or actually does incur as a result of Daniels' claims related to the property." The complaint further alleges that after the judgment was entered in the foreclosure action, Zale made demand on Dundee and Reger to defend and indemnify it against the Daniels' lien and judgment. Both Dundee and Reger denied any duty to defend or indemnify Zale and have failed to do so. As a result, FATIC, as subrogee of Zale, has been damaged by paying $621,408.01 to satisfy the Daniels' judgment and lien.

Reger argues that Count V fails to state a claim because Section 23.2 of the Sale Agreement provides that "no party hereto may assign or transfer any of its interest hereunder without express written consent of the other party hereto . . ." and that the complaint fails to allege that Reger consented to any assignment. As FATIC points out, however, its claim is not based on an assignment, but rather that as the party that paid the judgment pursuant to its obligations under the title insurance policy it is subrogated to Zale's right to proceed against

10

Reger.  "Subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned. Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim."  Remsen v. Midway Liquors, Inc., 30 Ill.App.2d 132, 143 (2d Dist. 1961). Therefore, the prohibition against assignment contained in the Sale Agreement is irrelevant to FATIC's subrogation claims.

Reger also argues that Zale has not been damaged and thus has no claim for breach of contract against him, because Reger obtained the title insurance policy to cover the lien.  Thus, because FATIC paid the judgment, Reger argues that Zale has suffered no loss.  This argument is without merit.  As FATIC points out, under this theory no insurance company could ever recover for claims it pays because the insured would not have suffered any out of pocket monetary loss. That would leave insurance companies with no remedy against the party that ultimately caused the loss.  This is simply not the law of subrogation.  Id.  Zale was damaged by the judgment because it was entered against Zale's property.  FATIC's payment to Daniels was on Zale's behalf.  Reger's motion to dismiss Count V is denied.

Finally, as a response to Reger's motion to dismiss Count VII, which is a claim pled in the alternative by FATIC as subrogee of Zale against Reger for unjust enrichment, FATIC seeks leave to replead to omit incorporating the paragraphs that assert the contractual relationship between Reger and Zale.  Those paragraphs form the basis of Reger's motion to dismiss Count VII.  FATIC's requested leave is granted and Reger's motion to dismiss Count VII is denied.

11

**II.     Attacks on the Crosscliam**

Cornerstone has brought a five count crossclaim against Dundee and Reger alleging: breach of loan documents against Dundee; breach of guaranty against Reger; unjust enrichment against both; fraudulent misrepresentation/fraudulent inducement against both; and negligent misrepresentation against both. Dundee and Reger have each moved to dismiss all claims.

A.     Count I

Dundee argues that Count I fails to state a claim for breach of contract because at the closing Cornerstone was paid the full amount due under the terms of the note, Loan Agreement and mortgage. Dundee argues that as a result of the payment none of the agreements are "presently in place, and thus none of them can serve as a basis for a breach of contract claim."

As Cornerstone points out, however, the loan documents, specifically the mortgage, provide:

> REINSTATEMENT OF SECURITY INTEREST. If payment is made by [Dundee] . . . or by [Reger] . . . of the Indebtedness and thereafter lender is forced to remit the amount of the payment . . . (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over lender or any of lender's property, or (C) by reason of any settlement or compromise of any claim made by lender with any claimant (including without limitation grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, not withstanding any cancellation of this Mortgage or any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been or originally received by Lender and [Dundee] shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

Count I is pled in the nature of a third-party claim, alleging that if judgment is entered against Cornerstone in favor of FATIC, and Cornerstone is forced to remit the payment it

12

received at closing, then Dundee is liable to Cornerstone. As such, the count states a claim for breach of contract.

B.    Count II

In Count II, Cornerstone alleges a breach of guaranty against Reger. Reger has moved to dismiss, raising the same argument that Dundee raised as to Count I, that the loan was paid in full. Reger's motion is denied for the same reason that Dundee's motion was denied. In addition, the guaranty contract specifically defines "indebtedness" as including "without limitation, . . . obligations, and liabilities of [Dundee], originated then reduced or extinguished and then afterwards increased or reinstated." The agreement further provides that it is a "continuing guaranty" under which [Reger] agrees to guarantee the full and punctual payment, performance and satisfaction of the indebtedness of [Dundee] to lender, now existing or hereafter arising or acquired, on an open and continuing basis.

Thus, if Cornerstone is forced to remit its payment, reinstating Dundee's indebtedness to Cornerstone, Reger's guaranty is also reinstated. Count II states a claim for breach of the guaranty.

C.    Count III

In Count III, Cornerstone alleges, in the alternative, a claim for unjust enrichment against Dundee and Reger. Both Dundee and Reger argue that unjust enrichment is based on implied contract and cannot apply when the complaint alleges a contractual relationship. See Boyd Group (U.S.) Inc. v. D'Orazio, 2015 WL 3463625 *7 (N.D. Ill. 2015). As Dundee and Reger both acknowledge, however, a party can plead breach of contract and unjust enrichment in the alternative, and both Dundee and Reger have challenged the existence of the contractual

13

relationship with Cornerstone after the loan was paid. Accordingly, the motion to dismiss Count III is denied.

D. Count IV

In Count IV, Cornerstone asserts a claim for fraudulent misrepresentation and/or fraudulent inducement against both Dundee and Reger. Fraud claims must satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements, meaning that Cornerstone must plead the who, what, when, where and how of the alleged fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

To prevail on a claim for fraud under Illinois law, a plaintiff must establish: (1) a false statement of material fact; (2) knowledge that the statement was false; (3) intent to induce the other party to act; (4) reliance by the plaintiff on that misrepresentation; and (5) injury caused by that reliance. Hassan v. Yusuf, 408 Ill.App.3d 327, 343 (1st Dist. 2011). "Fraud may be perpetrated by a misrepresentation or by concealment." Id. To constitute fraud in the inducement, the defendant must have made a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. Id. "A representation may be made by words or by actions or other conduct amounting to a statement of fact." Id. (quoting Glazewski v. Coronet Ins. Co., 108 Ill.2d 243, 250 (1985)).

Dundee and Reger argue that Cornerstone has failed to allege that they made any misrepresentation, instead alleging that they "did not inform Cornerstone of the Orders entered in the Foreclosure Action . . .." Thus, Dundee's and Reger's position is that Cornerstone has admitted that they made "no statements whatsoever regarding the Orders of the Foreclosure Action." The crossclaim, however, alleges that Dundee and Reger acted to induce Cornerstone

14

to release its lien by implying that Dundee could sell the property without restriction, that the title indemnity deposit was sufficient to cover the Daniels lien, and that Cornerstone would not be in jeopardy of having to remit its payment. These allegations are sufficient to identify a misrepresentation. Dundee's and Reger's other arguments that they had no duty to inform Cornerstone of the orders or that Cornerstone cannot plead reasonable reliance are not matters that can be determined on a motion to dismiss. "Malice, intent, knowledge and other conditions of mind of a person may be averred generally." Gondeck v. A Clear Title and Escrow Exch., LLC, 2012 WL 5200091 *3 (N.D. Ill. Oct. 22, 2012). Whether, as Dundee and Reger argue, Cornerstone "had exactly the same access to information regarding the Lien Claims, the Foreclosure Action and the Orders that [Dundee and Reger] had," cannot be determined at this stage of the litigation. Consequently, the motion to dismiss Count IV of the crossclaim is denied.

### E. Count V

In Count V, Cornerstone asserts a claim for negligent misrepresentation. Dundee and Reger moved to dismiss this claim under Moorman Manufacturing Co. v. National Tank Co., 91 Ill.2d 69, 88-89 (1982). Under the Moorman Doctrine, a plaintiff cannot recover for "solely economic loss unless the defendant either intentionally makes false representations or is in the business of supplying information for the guidance of others in their business transactions [and] makes negligence misrepresentations." Boyd Group, 2015 WL 3463625 at *10 (quoting Rankow v. First Chicago Corp., 870 F.2d 356, 362 (7th Cir. 1989). To determine whether a defendant is in the business of supplying information, courts generally ask whether the defendant's product or part of its product is information. Id. Under this test, stock brokers, real

15

estate brokers, and termite inspectors qualify because they supply information, while developers, builders, and manufacturers do not. Id. (citing Rankow, 870 F.2d at 363-64).

None of the allegations in either the crossclaim or the complaint plausibly lead to a conclusion that either Dundee or Reger was in the business of supplying information. They appear to be developers. Accordingly, Count V of the crossclaim fails to state a claim and is dismissed.

### III.     **Third-Party Complaint**

Cornerstone has brought a third-party complaint against Hallam, alleging legal malpractice and, in the alternative, breach of contract and promissory estoppel. Hallam has moved to dismiss arguing first that because there is no claim for indemnity, the complaint is not a proper third-party complaint under Fed. R. Civ. P. 14. Next, Hallam argues that because all three counts are based on the same operative facts and result in the same injury under Illinois law, the breach of contract and promissory estoppel claims are duplicative to the legal malpractice claim and should be dismissed.

Fed. R. Civ. P. 14(a)(1) provides that a defending party may serve summons and complaint on "a nonparty who is or may be liable to it for all or part of the claim against it." Cornerstone alleges, at least in part, that as a result of Hallam's malpractice, it may become liable to FATIC and, if so, Hallam would be liable to Cornerstone. That is sufficient to bring the claim under Rule 14.

Hallam also argues that under Illinois law, claims duplicative to a legal malpractice action cannot be pled in the alternative. See Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C., 385 F.3d 737, 744 (7th Cir. 2004) (and cases cited therein).

Hoagland and the cases its cites, however, hold only that a breach of fiduciary duty claim is duplicative to a legal malpractice claim and must be dismissed. A breach of contract claim is also duplicative, but under Illinois law may be pled in the alternative. See Nettleton v. Stogstill, 387 Ill.App.3d 743, 761-62 (2d Dist. 2008). Consequently, Hallam's motion to dismiss Counts II and III of the third-party complaint as duplicative is denied.

## CONCLUSION

For the reasons stated above, Dundee Reger's motion to dismiss the complaint (Doc. 37) is denied. Kevin Reger's motion to dismiss the complaint (Doc. 79) is denied. Dundee Reger's motion to dismiss the crossclaim (Doc. 59) is granted as to Count V of the crossclaim and denied in all other respects. Kevin Reger's motion to dismiss the crossclaim (Doc. 72) is granted as to Count V and denied in all other respects. Peter Hallam's motion to dismiss the third-party complaint (Doc. 70) is denied. Plaintiff is directed to file an amendment to Count VII of the complaint consistent with this opinion by April 12, 2016. Answers to the amended complaint, crossclaims and third-party complaints are due May 3, 2016. A joint status report prepared on the court's form is due on May 5, 2016. This matter is set for a report on status on May 10, 2016, at 9:00 a.m.

**ENTER:** **April 5, 2016**

_____
**Robert W. Gettleman
United States District Judge**